UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **DIJUAN JACKSON**        ) | |
|         Petitioner,    ) | |
| ) | |
| **v.**        ) | |
| ) | Civil Action No. 06-10066-RGS |
| ) | |
| **MICHAEL A. THOMPSON  et al,** ) | |
|         Respondents       ) | |
| ) | |

### MEMORANDUM IN SUPPORT OF PETITION FOR
### WRIT OF HABEAS CORPUS

On August 13, 1999, a Suffolk County (Massachusetts) grand jury returned a four-count indictment against defendant DiJuan Jackson on charges of first degree murder, *Mass. Gen. L. c. 265, § 1, Indictment No. 99-10771-001, Defendant's Record Appendix, at R. A. 1*; assault and battery by means of a dangerous weapon, *Mass. Gen. L. c. 265, § 15A, Indictment No. 99-10771-002, Defendant's Record Appendix, at R. A. 2*; assault by means of a dangerous weapon, *Mass Gen. L. c. 265, § 15B(b), Indictment No. 99-10771-003, Defendant's Record Appendix, at R. A. 3*; and possession of a firearm, *Mass. Gen. L. c. 269, § 10(a), Indictment No. 99-10771-004, Defendant's Record Appendix, at R. A. 4.*  It was alleged that the charged offenses were committed on June 5, 1999.  *Indictment Nos. 99-10771-001 through 99-10771-004, Defendant's Record Appendix, at R. A. 1-4.*

On May 16-18, and May 21-24, 2001, a jury trial was conducted on the above charges.[1]

---

[1] Trial Transcript, Commonwealth vs. DiJuan Jackson, Suffolk Superior Court No. SUCR99-10771, Before Brady, J., and a Jury: Wednesday, May 16, 2001, Boston, Massachusetts, pages 1 through 232 (Volume I); id., Thursday, May 17, 2001, pages 1 through 195 (Volume II); id., Friday, May 18, 2001, pages 1 through 268 (Volume III); id., Monday, May 21, 2001, pages 1

The jury returned verdicts on said charges on May 24, 2001.  *Defendant's Record Appendix, at R. A. 55; Trial Tr. Vol. VII, at 4-6.*  As to *Indictment  No. 99-10771-001*, charging first degree murder, and *Indictment No. 10771-003*, charging assault by means of a dangerous weapon, the jury found the defendant not guilty.  *Defendant's Record Appendix, at R. A. 55; Trial Tr. Vol. VII, at 4-6.*  As to *Indictment No. 99-10771-002*, charging assault and battery by means of a dangerous weapon, and *Indictment No. 99-10771-004*, charging possession of a firearm, the jury found the defendant guilty.  *Defendant's Record Appendix, at R. A. 55; Trial Tr. Vol. VII, at 4-6.*  Petitioner was sentenced on May 29, 2001.  *Defendant's Record Appendix, at R. A. 55, 57; Tr. Disposition.*  As to the conviction for assault and battery by means of a dangerous weapon, *Indictment No. 99-10771-002*, petitioner was sentenced to state prison for a maximum term of ten years and a minimum term of nine years and eleven months.  *Tr. Disposition, at 24-25; Defendant's Record Appendix, at 55.*  The offense of assault and battery by means of a dangerous weapon was punishable by a maximum of ten years in state prison.  *See Mass. Gen. L. c. 265, § 15A (2001).*  As to the conviction for possession of a firearm, *Indictment No. 99-10771-004*, petitioner was sentenced to state prison for a maximum term of five years and a

---

through 264 (Volume IV); id., Tuesday, May 22, 2001, pages 1 through 185 (Volume V); id., Wednesday, May 23, 2001, pages 1 through 20 (Volume VI); id., Thursday, May 24, 2001, pages 1 through 10 (Volume VII) (hereinafter, "*Trial Tr. Vol. I, at (page)*" through "*Trial Tr. Vol. IV, at (page)*", respectively); Transcript, Commonwealth vs. DiJuan Jackson, Suffolk Superior Court No. SUCR99-10771, Disposition, May 29, 2001, pages 1-28 (hereinafter, "*Tr. Disposition, at (page)*").

minimum term of four years and eleven months, to be served from and after the sentence on *Indictment No. 10771-002. Tr. Disposition, at 24-25; Defendant's Record Appendix, at 55.* The offense of possession of a firearm was punishable by a maximum of five years in state prison. *See Mass. Gen. L. c. 269, § 10(a) (2003).*

Petitioner timely appealed his convictions to the Appeals Court for the Commonwealth of Massachusetts, *see Defendant's Record Appendix, at R. A. 49, 55, 56*, addressing, *inter alia*, the following claims: (1) that the trial judge committed reversible error by precluding petitioner from questioning witness Jaron O'Bannon regarding any bias he may have had in favor of the prosecution resulting from his pending charge of possession of ammunition, in violation of the Sixth and Fourteenth Amendments, *see Defendant's Brief, at 1, 17, 20-23;* (2) that the trial judge committed reversible error by precluding petitioner from questioning witness Jaron O'Bannon regarding any bias he may have had in favor of the prosecution resulting from his pending charge of possession of ammunition, in violation of Article 12 of the Massachusetts Declaration of Rights, *see Defendant*'s *Brief, at 1, 17-23;* (3) that the trial judge committed reversible error by failing to preclude evidence of petitioner's alleged prior bad acts involving the alleged threatening and intimidation of Barrenton McIntosh, the alleged victim of the alleged assault by means of a dangerous weapon charged in *Indictment No. 99-10771-003, Defendant's Record Appendix, at R. A. 3; see Defendant's Brief, at 1, 23-25;* (4) that the trial judge committed reversible error by refusing to give a missing witness instruction as to Barrenton McIntosh, *see Defendant's Brief, at 1-2, 25-31;* (5) that petitioner's sentence must be vacated because it was imposed in violation of petitioner's right against self-incrimination under the Fifth and Fourteenth Amendments, *see Defendant's Brief, at 2, 31-35;* (6) that petitioner's sentence must be vacated because it was imposed in violation of petitioner's right against self-incrimination

under Article 12 of the Massachusetts Declaration of Rights, *see Defendant's Brief, at 2, 31-36;* and (7) that petitioner's sentence must be vacated because it may have been imposed based on the acquitted charge of murder in violation of Massachusetts law, *see Defendant's Brief, at 2, 31-34, 37-38.*

On June 18, 2004, The Appeals Court for the Commonwealth of Massachusetts affirmed petitioner's convictions and sentences on the charges of assault and battery by means of a dangerous weapon, *Indictment No. 99-10771-002*, and possession of a firearm. *Indictment No. 99-10771-004.*. See Commonwealth vs. DiJuan Jackson, No. 03-P-509 (Mass. App. Ct. June 18, 2004), unpublished opinion at 61 Mass. App. Ct. 1111, 810 N.E.2d 862 (2004) (hereinafter, "slip op."). [2] The Appeals Court determined (1) that petitioner was not improperly precluded from cross-examining prosecution witness Jaron O'Bannon about a charge against him that was pending at the time of trial, slip op. at 1-2; (2) that the evidence that petitioner had threatened Barrenton McIntosh was admissible, slip op. at 2; (3) that a missing witness instruction as to McIntosh was not required, slip op., at 2; and (4) that petitioner's sentence was appropriate and lawful based on the facts of the crimes for which petitioner was convicted and his criminal record. Slip op., at 2-3.

In the *Defendant's Application for Further Appellate Review,* the petitioner stated as the points for further appellate review, *inter alia,* the following federal questions: (1) Whether the right against self-incrimination under the Fifth and Fourteenth Amendments to the United States Constitution precludes a judge from sentencing a defendant more harshly because he has failed

---

[2] The slip opinion constituting the Memorandum and Order Pursuant to Rule 1:28 issued by the Appeals Court as the decision in this case is appended to *Defendant's Application for Further Appellate Review*, which is Exhibit H of respondent's *Supplemental Answer.* The citations in this Memorandum to the Appeals Court's decision in this case refer to said slip

either to provide an explanation or context for the alleged criminal conduct or to express remorse for purportedly having committed that alleged criminal conduct, *Defendant's Application for Further Appellate Review, at 9, 11-12;* (2) Whether the trial judge impermissibly sentenced the defendant on one or more factors not presented to the jury in violation of the Sixth and Fourteenth Amendments to the United States Constitution in the manner set forth by the United States Supreme Court in Blakely v. Washington, 542 U.S. 296 (2004), *Defendant's Application for Further Appellate Review, at 9-10, 14-15;* and (3) Whether under the Confrontation Clause of the Sixth Amendment to the United States Constitution, made applicable to the States through the Fourteenth Amendment to the United States Constitution, a defendant has a right to cross-examine a prosecution witness as to any bias resulting from a charge pending against the witness where the record contains a reasonable basis for the jury to doubt the veracity of the witness, *Defendant's Application for Further Appellate Review, at 10, 15-17.*  On September 10, 2004, the Supreme Judicial Court of Massachusetts denied petitioner's application for further appellate review.  Commonwealth v. Jackson, 442 Mass. 1107 (2004).  The United States Supreme Court denied petitioner's petition for writ of certiorari on January 24, 2005.  Jackson v. Massachusetts, 543 U.S. 1128 (2005).

## STATEMENT OF FACTS

The evidence at trial included the following:

At approximately 8:35 p.m. or 8:40 p.m. on June 5, 1999, a shooting occurred on Greenfield Road in the Mattapan section of Boston, Massachusetts.  *Trial Tr. Vol. II, at 131-132.*  A large crowd gathered on Greenfield Road as the victim, Shaun Tilghman, lay in the street.

---

opinion.

*Trial Tr. Vol. II, at 131-132.* Tilghman died of a gunshot wound to the chest. *Trial Tr. Vol. IV, at 212.* On the afternoon of June 6, 1999, three spent .32 caliber shell casings were found on a sidewalk of Greenfield Road. *Trial Tr. Vol. IV, at 69, 73-74, 103-106, 109-110.*

Prosecution witness Carl Salvas testified that at 8:00 p.m. or 8:15 p.m. on June 5, 1999, he was outside on Greenfield Road with Jaron O'Bannon, Michael Tousant, and Damien Perry. *Trial Tr. Vol. III, at 215-218.* Salvas testified that he, O'Bannon, Tousant, and Perry walked to a liquor store and Tilghman accompanied them, traveling on a bicycle. *Trial Tr. Vol. III, at 217-220.* According to the testimony of Carl Salvas, at some point Tilghman said he forgot something at the store and was going back. *Trial Tr. Vol. III, at 221.* Salvas testified that he and the others continued walking, stopped in front of a driveway, and started to walk in. *Trial Tr. Vol. III, at 221.* Salvas further testified that while he was in this driveway he heard three gunshots, and saw Tilghman fall against a van and onto the ground. *Trial Tr. Vol. III, at 221, 224-230.* Salvas testified that at this time he saw the petitioner, with a nylon stocking covering his face and a black gun in his hands, running away from Tilghman and toward Salvas. *Trial Tr. Vol. III, at 224-230.*

Prosecution witness Jaron O'Bannon testified that on June 5, 1999, after 8:00 p.m., he was in a driveway on Greenfield Road with Salvas and Michael Tousant, and that while he was in that driveway he heard approximately five to seven gunshots. *Trial Tr. Vol. III, at 59, 66-69.* O'Bannon testified that when he heard the gunshots he jumped over two fences and ended up in a "the little forest" behind some houses. *Trial Tr. Vol. III, at 69-72.* O'Bannon testified that at some point he saw the petitioner holding a black gun with a barrel that purportedly was six inches or eight inches long. *Trial Tr. Vol. III, at 73-77.* O'Bannon testified that the petitioner walked towards him, that O'Bannon stated, "I ain't got no problems", and that the petitioner

6

grabbed O'Bannon by the shirt and then hit O'Bannon in the face with the gun. *Trial Tr. Vol. III, at 74, 77.* O'Bannon further testified that as a result of being hit in the face with a gun he lost five teeth and received four chipped teeth, and his lips required stitches. *Trial Tr. Vol. III, at 83.*

Prior to petitioner's sentencing hearing, the Commonwealth submitted a sentencing memorandum. *Defendant's Record Appendix, at R. A. 41-48 ("Commonwealth's Sentencing Memorandum").* The trial judge read *Commonwealth's Sentencing Memorandum* prior to the sentencing hearing. *Tr. Disposition, at 3.*

At the sentencing hearing, the Commonwealth asked the trial judge to sentence petitioner to nine to ten years in state prison on the conviction for assault and battery by means of a dangerous weapon, and three to five years on the conviction for possession of a firearm. *Tr. Disposition, at 7-8.* Petitioner's trial counsel suggested to the trial judge that under the Massachusetts sentencing guidelines the defendant should receive a sentence "anywhere between thirty months and seventy-five months", and recommended a sentence of three to five years. *Tr. Disposition, at 21-22.* Compare Massachusetts Sentencing Guidelines, Criminal History Groups, Criminal History Group "C" ("Serious Record", defined as "Three to five prior convictions in any combination for offenses in levels three or four; or [o]ne prior conviction for offenses in levels five or six."), *Defendant's Brief, Addendum, at A. 26* and Massachusetts Sentencing Guidelines, Sentencing Guidelines Grid, at Levels 3, 4, *Defendant's Brief, Addendum, at A. 28* with  Massachusetts Sentencing Guidelines, Sentencing Guidelines Grid, supra, at Levels 5, 6, *Defendant's Brief, Addendum, at A. 28*; see generally *Defendant's Brief, Addendum, at A. 29*.

Sentencing judges in Massachusetts are not required to apply the Massachusetts Sentencing Guidelines.  See  Abrahams v. Commissioner of Correction, 57 Mass. App. Ct. 861,

863-864 (2003) ("There are no mandatory sentencing guidelines, see G. L. c. 211E, § 3").

However, the Massachusetts Sentencing Guidelines have been applied in Massachusetts courts. See, e.g., Commonwealth v. White, 436 Mass. 340, 342 (2002) ("The resentencing judge informed the parties that, in reaching her sentencing disposition, she had 'reviewed and considered' several factors, including[, *inter alia*,] . . . "the sentencing guidelines; [and] the defendant's prior criminal record, which 'puts him in the most serious offender category on the sentencing guidelines'"); Commonwealth v. LaPointe, 435 Mass. 455, 457 (2001) ("Before imposing the defendant's sentence, the judge stated that he had considered numerous factors, including . . . the sentencing guidelines"); Commonwealth v. Lord, 55 Mass. App. Ct. 265, 273, review denied, 437 Mass. 1108 (2002) ("The memorandum prepared by the judge was for the purpose of explaining her reasons for departing from the penalty range suggested by the sentencing guidelines."); *Tr. Disposition, at 23* (as quoted below).

As indicated above, the trial judge sentenced the petitioner on the conviction for assault and battery by means of a dangerous weapon, *Indictment No. 99-10771-002*, to state prison for a maximum term of ten years and a minimum term of nine years and eleven months, *Tr. Disposition, at 24-25; Defendant's Record Appendix, at 55;* and the trial judge sentenced the petitioner on the conviction for possession of a firearm, *Indictment No. 99-10771-004,* to state prison for a maximum term of five years and a minimum term of four years and eleven months, to be served from and after the sentence on *Indictment No. 10771-002 . Tr. Disposition, at 24-25; Defendant's Record Appendix, at 55.*

During the trial judge's statement of his reasons for sentencing the defendant as he did, the trial judge stated, *inter alia*,

In this case, he treated the victim with particular cruelty. There is no reason to

8

>believe that O'Bannon, whatever his record happened to have been, was anything but an innocent bystander in this. He knocked five front teeth out with a pistol. There is no explanation, no indication of any remorse, no context. He just knocked his teeth out. That, in my opinion, is treatment of a person with particular cruelty and warrants, in my opinion, a departure from the guidelines.

*Tr. Disposition, at 23 (quoted in Defendant's Brief, at 33-34 and in Defendant's Application for Further Appellate Review, at 8) (emphasis added).* Petitioner's trial counsel did not address these remarks. *See Tr. Disposition, at 23-27.*

## ARGUMENT

### I. Standards of Review.

Pursuant to 28 U.S.C. § 2254(d)(1),

>An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>   (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States . . . .

28 U.S.C. § 2254(d)(1).

"If a claim was not adjudicated on the merits in a state court proceeding, then the issue is reviewed de novo." Norton v. Spencer, 351 F.3d 1, 4-5 (1st Cir. 2003), cert. denied, 542 U.S. 933 (2004).

The text of 28 U.S.C. § 2254(d)(1) "is fairly read simply as a command that a federal court not issue the habeas writ unless the state court was wrong as a matter of law or unreasonable in its application of law in a given case." Williams v. Taylor, 529 U.S. 362, 385 (2000). "In sum, the statute directs federal courts to attend to every state-court judgment with utmost care, but it does not require them to defer to the opinion of every reasonable state-court judge on the content of federal law. If, after carefully weighing all

9

the reasons for accepting a state court's judgment, a federal court is convinced that a prisoner's custody . . . violates the Constitution, that independent judgment should prevail." Id., 529 U.S. at 389.

"[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts' of petitioner's case." Wiggins v. Smith, 539 U.S. 510, 520 (2003) (quoting 28 U.S.C. § 2254(d)(1) and Williams v. Taylor, supra, 529 U.S. at 413).

**II.     Violation of the Fifth Amendment right against self-incrimination.**

"The Fifth Amendment Self-Incrimination Clause, which applies to the States via the Fourteenth Amendment, Malloy v. Hogan, 378 U.S. 1 . . . (1964), provides that no person 'shall be compelled in any criminal case to be a witness against himself.'" McKune v. Lile, 536 U.S. 24, 35 (2002).

In Mitchell v. United States, 526 U.S. 314 (1999), the United States Supreme Court held the Fifth Amendment protection against self-incrimination applies to sentencing proceedings. See id., 526 U.S. at 326-327, 328-329. The United States Supreme Court stated,

> The Fifth Amendment by its terms prevents a person from being "compelled in any  criminal case to be a witness against himself." U.S. Const., Amdt. 5. To maintain that sentencing proceedings are not part of "any criminal case" is contrary to the law and to common sense.

Mitchell v. United States, supra, 526 U.S. at 327.

In Mitchell v. United States, supra, petitioner Amanda Mitchell had pled guilty to federal drug charges and had reserved the right to contest the drug quantity attributable to

her under a conspiracy count, which drug quantity was to be determined at Mitchell's sentencing hearing. Mitchell v. United States, supra, 526 U.S. at 317. The federal district judge in sentencing Mitchell indicated that he was sentencing Mitchell more harshly, by attributing to her a higher drug quantity than otherwise might have been the case, because Mitchell did not "come forward and explain" her conduct with respect to the charged offenses. See Mitchell, supra, 526 U.S. at 319. The United States Supreme Court in Mitchell, supra, held the sentencing of Mitchell, in the manner that it occurred, to be impermissible under the Fifth Amendment's Self-Incrimination Clause. See Mitchell, supra, 526 U.S. at 328-330. The Court concluded that "[b]y holding petitioner's silence against her in determining the facts of the offense at the sentencing hearing, the District Court imposed an impermissible burden on the exercise of the constitutional right against compelled self-incrimination." Mitchell, supra, 526 U.S. at 328-330. The Court stated,

> The concerns which mandate the rule against negative inferences at a criminal trial apply with equal force at sentencing. . . . The Government often has a motive to demand a severe sentence, so the central purpose of the privilege -- to protect a defendant from being the unwilling instrument of his or her own condemnation -- remains of vital importance.

Mitchell v. United States, supra, 526 U.S. at 329.

In the case at bar, the trial judge specifically indicated that he was sentencing petitioner more harshly because of petitioner's silence, stating,

> In this case, he treated the victim with particular cruelty. There is no reason to believe that O'Bannon, whatever his record happened to have been, was anything but an innocent bystander in this. He knocked five front teeth out with a pistol. **There is no explanation, no indication of any remorse, no context.** He just knocked his teeth out. That, in my opinion, is treatment of a person with particular cruelty and warrants, in my opinion, a departure from the guidelines.

*Tr. Disposition, at 23 (quoted in Defendant's Brief, at 33-34 and in Defendant's Application for Further Appellate Review, at 8) (emphasis added).* Accordingly, the petitioner was sentenced in clear violation of his Fifth Amendment right against self-incrimination. See Mitchell v. United States, supra; U.S. Const. amend V, Self-Incrimination Clause.

In light of the foregoing, this petition should be granted, whether the issue is reviewed de novo or under 28 U.S.C. § 2254(d), because the Appeals Court's decision, in which the Appeals Court found that petitioner's sentence was appropriate and lawful based on the facts of the crimes for which petitioner was convicted and his criminal record, constituted reversible error and was both contrary to clearly established Federal law, as determined by the Supreme Court of the United States, and involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States. See 28 U.S.C. § 2254(d)(1).

### III. Violation of the Sixth Amendment's Confrontation Clause.

"The Sixth Amendment to the Constitution guarantees the right of an accused in a criminal prosecution 'to be confronted with the witnesses against him.'" Davis v. Alaska, 415 U.S. 308, 315 (1974). "This right is secured for defendants in state as well as federal criminal proceedings under Pointer v. Texas, 380 U.S. 400 (1965)." Davis v. Alaska, supra, 415 U.S. at 315. "Confrontation means more than being allowed to confront the witnesses physically. 'Our cases construing the [confrontation] clause hold that a primary interest secured by it is the right of cross-examination.'" Id. (quoting Douglas v. Alabama, 380 U.S. 415, 418 (1965)).

Cross-examination is the principal means by which the believability of a witness

    and the truth of his testimony are tested.  Subject always to the broad discretion of
    a trial judge to preclude repetitive and unduly harassing interrogation, the cross-
    examiner is not only permitted to delve into the witness' story to test the witness'
    perceptions and memory, but the cross-examiner has traditionally been allowed to
    impeach, *i.e.*, discredit, the witness.

Davis v. Alaska, supra, 415 U.S. at 316.  "A more particular attack on the witness' credibility is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand."  Id.

    The denial of the right of effective cross-examination would be "constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it."  Davis v. Alaska, supra, 415 U.S. at 318 (citations and internal quotations omitted).

    In Davis v. Alaska, supra, the United States Supreme Court held that a trial judge's preclusion of the defendant from cross-examining crucial prosecution witness Richard Green as to his delinquency adjudication for burglary and the fact that he was on probation for burglary was a violation of the Sixth Amendment's Confrontation Clause. See Davis v. Alaska, supra, 415 U.S. at 310-311.  "[P]etitioner sought to introduce evidence of Green's probation for the purpose of suggesting that Green was biased and, therefore, that his testimony was either not to be believed in his identification of petitioner or at least very carefully considered in that light."  Id., 415 U.S. at 319.  The United States Supreme Court concluded that "the jurors were entitled to have the benefit of the defense theory before them so that they could make an informed judgment as to the weight to place on Green's testimony which provided 'a crucial link in the proof . . . of petitioner's act.'"  Davis v. Alaska, supra, 415 U.S. at 317 (quoting Douglas v. Alabama, supra, 380 U.S. at 419).

As in Davis v. Alaska, supra, in the case at bar defense counsel "should have been permitted to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness", see Davis v. Alaska, supra, 415 U.S. at 318, in particular the fact that the prosecution witness at issue may have been testifying with a bias "to curry favor with the Commonwealth by way of what [he was] possibly facing". See *Trial Tr. Vol. III, at 28*; Davis v. Alaska, supra, 415 U.S. at 309-311, 317-319.  As in Davis v. Alaska, supra, the jurors were entitled to have the benefit of the defense theory before them so that they could make an informed judgment as to the weight to place on the prosecution testimony at issue where the accuracy and truthfulness of said testimony were key elements in the prosecution's case.  See id., 415 U.S. at 317-318*; Trial Tr. Vol. III, at 73-77* (O'Bannon testified that at some point he saw the petitioner holding a black gun with a barrel that purportedly was six inches or eight inches long); *Trial Tr. Vol. III, at 74, 77* (O'Bannon testified that the petitioner walked towards him, that O'Bannon stated, "I ain't got no problems", and that the petitioner grabbed O'Bannon by the shirt and then hit O'Bannon in the face with the gun)..

The trial judge's determination to preclude the requested cross-examination on the basis of a purported lack of material inconsistency in the witness's testimony before and after the institution of the pending charge was contrary to the United States Supreme Court's determination of what constitutes a material inconsistency in Napue v. Illinois, 360 U.S. 264 (1959), in which the Court indicated that any matter raising doubt as to a witness's credibility was material as a matter of constitutional law.  See Napue v. Illinois, supra, 360 U.S. at 269-270 ("The jury's estimate of the truthfulness and reliability of a

given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend.") (applying due process under the Fourteenth Amendment).

The inconsistencies between Mr. O'Bannon's trial testimony and his statements made prior to the existence of the pending charge cast doubt on O'Bannon's credibility as a witness. (Compare *Trial Tr. Vol. III, at 59* (O'Bannon testifies that on June 5, 1999, beginning at 8:00 p.m., he was on Roseberry Street with Damien Perry and others) with *Trial Tr. Vol. III, at 96* (O'Bannon admits during his testimony that he lied to the police on June 6, 1999, by covering up the fact that Damien Perry was present with him on June 5, 1999); also compare *Trial Tr. Vol. III, at 66-68* (O'Bannon testifies that on the evening of June 5, 1999, at some point Shaun Tilghman left the group and Jaron O'Bannon, Michael Tousant, and Carl Salvas went into a driveway to smoke a marijuana joint) with *Trial Tr. Vol. III, at 101-103* (O'Bannon told the grand jury that while on the driveway he was smoking a cigarette).

Further, it was impermissible under the Sixth Amendment's Confrontation Clause for the trial judge to preclude the requested cross-examination based on the trial judge's determination that O'Bannon's testimony was credible.  See Crawford v. Washington, 541 U.S. 36, 62 (2004) ("Dispensing with confrontation because testimony is obviously reliable is akin to dispensing with jury trial because a defendant is obviously guilty.  This is not what the Sixth Amendment prescribes."); see also id., 541 U.S. at 61-69.  "Where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." Crawford v. Washington, supra, 541 U.S. at 68-69.

In light of the foregoing, this petition should be granted, whether the issue is reviewed de

novo or under 28 U.S.C. § 2254(d), because the Appeals Court's decision, in which the Appeals Court found that the defendant was not improperly precluded from cross-examining prosecution witness Jaron O'Bannon about a charge against him that was pending at the time of trial, constituted reversible error <u>and</u> was both contrary to clearly established Federal law, as determined by the Supreme Court of the United States, and involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States. <u>See</u> 28 U.S.C. § 2254(d)(1).

For all of the reasons stated above, petitioner respectfully urges this Honorable Court to grant his petition for a writ of habeas corpus.

                                                    Respectfully submitted,

                                                    DIJUAN JACKSON
                                                    By his Attorney,

                                                    <u>/s/ David H. Mirsky</u>
                                                    David H. Mirsky, Attorney at Law
                                                    (MA B.B.O. # 559367)
                                                    99 Water Street, P.O. Box 1063
                                                    Exeter, NH 03833
                                                    Tel. 603-773-2199

Dated: June 14, 2006

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on June 14, 2006, including Scott A. Katz, Assistant Attorney General, counsel for the respondents Michael A. Thompson et al., in this matter. There are no non-registered participants involved in this case.

                                                    <u>/s/ David H. Mirsky</u>
                                                    David H. Mirsky
                                                    Attorney at Law