UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                              )
DiJUAN JACKSON,                              )
                                                              )
    Petitioner,                                    )
                                                              )
v.                                                            )         Civil Action No. 06-10066-RGS
                                                              )
MICHAEL A. THOMPSON,                    )
                                                              )
    Respondent.                                  )
_____)

**RESPONDENT MICHAEL A. THOMPSON'S OBJECTIONS TO THE
MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Respondent Michael A. Thompson respectfully submits the following objections to the Magistrate Judge's Report and Recommendation on Petition for Writ of Habeas Corpus ("R&R"), issued January 3, 2007.[1]

In his petition for a writ of habeas corpus, the petitioner sets forth two claims for relief. In particular, he alleges that:

(1)     the sentencing judge sentenced him more harshly because of his silence, thereby violating the petitioner's Fifth Amendment right against self-incrimination ("Ground One"); and

(2)     his Sixth Amendment right to confrontation was violated because the trial judge precluded cross-examination of the victim about a pending charge the victim faced at the time of trial ("Ground Two").

As described more fully below, while Respondent agrees with the Magistrate Judge's ultimate conclusion that habeas relief is not warranted on either of the petitioner's claims, Respondent raises three specific objections to the Magistrate Judge's analysis:

---

[1]     Docket entry # 13.

(1) The Magistrate Judge erred by reviewing the claim in Ground One *de novo*. Because the Massachusetts Appeals Court explicitly rejected the petitioner's argument that his right against self-incrimination had been violated, the Magistrate Judge should have applied the deferential standard of review provided in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2254(d)(1).

(2) By reviewing Ground One *de novo* rather than applying AEDPA's deferential standard of review, the Magistrate Judge failed to recognize that there is no "clearly established Federal law, as determined by the Supreme Court" sufficient to warrant habeas relief for the type of claim alleged in Ground One. Because no such clearly established Supreme Court law exists, habeas relief under 28 U.S.C. § 2254(d)(1) is unavailable on such a claim.

(3) In his review of Ground Two, the Magistrate Judge correctly determined that the petitioner did not have a right to cross-examine the victim about the victim's pending charge. Because he found no error, the Magistrate Judge did not include a harmless error analysis. But in setting forth the test which would apply had he found error, the Magistrate Judge erroneously cited the harmless-beyond-a-reasonable-doubt standard found in *Chapman v. California*, 386 U.S. 18 (1967). Because the petitioner's claim arises in the habeas context—rather than on direct review—the Magistrate Judge should have cited the substantial-and-injurious-effect standard established in *Brecht v. Abrahamson*, 507 U.S. 619 (1993).

## I. The Magistrate Judge Should Have Reviewed Ground One Under AEDPA's Deferential Standard of Review.

The Magistrate Judge reviewed Ground One of the petition *de novo*, rather than applying AEDPA's deferential standard of review. *See* R&R at 4-5 (citing *Norton v. Spencer*, 351 F.3d 1, 4-5 (1st Cir. 2003); *DiBenedetto v. Hall*, 272 F.3d 1, 6-7 (1st Cir. 2001); *Fortini v. Murphy*, 257 F.3d 39, 47 (1st Cir. 2001)). The basis of the Magistrate Judge's decision was that on direct review, the Massachusetts Appeals Court did not cite federal law or explicitly articulate a state-law standard more favorable to criminal defendants than the standard applicable under the U.S. Constitution. *See* R&R at 4-5. The Magistrate Judge's decision to review Ground One *de novo* was incorrect for two reasons.

First, Respondent respectfully submits that, notwithstanding the cases relied on by the Magistrate Judge, § 2254(d)(1) applies so long as the state court reached the merits of a claim—*i.e.*, the claim was not denied merely on procedural grounds—regardless of whether the state court actually included in a written decision a statement as to why the federal claim does not warrant relief.  *See, e.g.*, *Sellan v. Kuhlman*, 261 F.3d 303, 311-12 (2d Cir. 2001) ("For the purposes of AEDPA deference, a state court 'adjudicate[s]' a state prisoner's federal claim on the merits when it (1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment.  When a state court does so, a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim—even if the state court does not explicitly refer to either the federal claim or to relevant federal case law."); *Muth v. Frank*, 412 F.3d 808, 815 (7th Cir. 2005) (citing cases and noting that "[a]n adjudication on the merits is perhaps best understood by stating what it is not: it is not the resolution of a claim on procedural grounds"); *see also Chadwick v. Janecka*, 312 F.3d 597, 605-06 (3d Cir. 2002) (explaining that in *Weeks v. Angelone*, 528 U.S. 225 (2000), the Supreme Court applied AEDPA to a claim rejected without explanation by the state supreme court).[2]

Next, even under the cases relied on by the Magistrate Judge, AEDPA's deferential standard of review applies to the petitioner's claim in Ground One.  Here, the Massachusetts Appeals Court adjudicated the merits of the petitioner's federal claim by explicitly rejecting his argument that the sentencing judge "violated his right

---

[2]   Respondent recognizes that this Court is obligated to follow the decisions of the First Circuit, but includes this argument to preserve it for appellate review.

against self-incrimination." *Commonwealth v. Jackson*, 61 Mass. App. Ct. 1111, 810 N.E.2d 862 (2004) (unpublished Memorandum and Order Pursuant to Rule 1:28) (attached as Exhibit F to Respondent's Supplemental Answer[3]) (emphasis added).  In his brief to the Appeals Court, the petitioner argued that the sentencing judge had violated his right against self-incrimination under both the Fifth Amendment[4] and its Massachusetts analog—Article 12 of the Massachusetts Declaration of Rights.[5]  By holding that the petitioner's "right against self-incrimination" had not been violated, the Appeals Court addressed—and rejected—the petitioner's federal and state constitutional arguments.  While the Appeals Court perhaps could have more clearly indicated that it was rejecting the petitioner's claim under both the Fifth Amendment and Article 12, AEDPA does not impose such a requirement.  *See Rashad v. Walsh*, 300 F.3d 27, 45 (1st Cir.2002) (noting that under AEDPA, federal courts should not "grade a state court opinion as if it were a law school examination").

As noted, the Magistrate Judge faulted the Appeals Court for failing to cite federal law or explicitly articulate a state-law standard more favorable to criminal defendants than the one applicable under the U.S. Constitution.  R&R at 4.  The Magistrate Judge is correct that the Appeals Court failed to cite federal law.  But it is

---

[3]     Respondent's Supplemental Answer (the "Supplemental Answer" or "Supp. Ans."), filed on March 30, 2006 (docket entry # 8), contains the docket entries, briefs, and decisions relating to the state-court convictions at issue.

[4]     The Self-Incrimination Clause of the Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself."  U.S. Const., amend. V.

[5]     Article 12 provides, in relevant part: "No subject shall . . . be compelled to accuse, or furnish evidence against himself."  Mass. Const., art. 12.

not required to do so. *See, e.g.*, *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003) (*per curiam*) ("A state court's decision is not contrary to clearly established Federal law simply because the court did not cite our opinions.") (internal quotation marks and ellipsis omitted). Indeed, a state court need not even be aware of the Supreme Court's precedents, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002) (*per curiam*). Here, the Appeals Court explicitly held that the petitioner's "right against self-incrimination" was not violated. This is sufficient to demonstrate that it addressed the petitioner's claim under the Fifth Amendment—in spite of its failure to cite federal caselaw.

Finally, even if the Appeals Court's decision could somehow be read as rejecting the petitioner's claim only under Article 12 (while apparently ignoring his Fifth Amendment argument), AEDPA still applies because Article 12 provides greater protection to criminal defendants than the Fifth Amendment. *See McCambridge v. Hall*, 303 F.3d 24, 35 (1st Cir. 2002) (holding that AEDPA deference applies where the state court applies a state-law standard more favorable to defendants than the analogous federal standard). While the Magistrate Judge is correct that the Appeals Court did not explicitly articulate a more favorable state-law standard in its decision, Massachusetts caselaw makes clear that Article 12 is more favorable to defendants than the Fifth Amendment. *See, e.g.*, *Commonwealth v. Collins*, 440 Mass. 475, 475, 799 N.E.2d 1251, 1252 (2003) ("[T]he protections against self-incrimination afforded criminal defendants by art. 12 of the Massachusetts Declaration of Rights are greater than those embodied in the Fifth Amendment to the United States Constitution . . . ."); *Commonwealth v. Conkey*, 430 Mass. 139, 142 n.3, 714 N.E.2d 343, 347 n.3 ("Article 12 has broader language than the Fifth Amendment and provides greater protection.").

Indeed, in his brief to the Appeals Court, the petitioner himself recognized that Article 12 provided him with greater protection. Supp. Ans., Exh. C at 35 (quoting *Commonwealth v. Acosta*, 416 Mass. 279, 283, 627 N.E.2d 466, 469 (1993)). Accordingly, even if the Appeals Court had evaluated the petitioner's claim only under Article 12, it is evident that the court applied at least as onerous a standard as would be required under the Fifth Amendment. Because there is caselaw "that explicitly says that the state adheres to a standard that is more favorable to defendants that the federal standard . . . [the Court should] presume the federal law adjudication to be subsumed within the state law adjudication." *McCambridge*, 303 F.3d at 35. Thus, for all these reasons, AEDPA deference—rather than *de novo* review—applies to the petitioner's claim in Ground One.

## II. Under AEDPA, the Petitioner is not Entitled to Relief on Ground One of His Petition.

As noted, after reviewing Ground One *de novo*, the Magistrate Judge rejected the petitioner's claim. Because, as argued above, the Magistrate Judge should have evaluated Ground One under AEDPA, Respondent includes herein the argument presented to the Magistrate Judge regarding the proper application of AEDPA to Ground One of the petition.

In Ground One, the petitioner contends that his Fifth Amendment right against self-incrimination was violated because, he alleges, the trial court sentenced him more harshly based on his silence. In support of this claim, the petitioner seizes on one statement made by the judge in explaining his reasons for the petitioner's sentence; referring to the petitioner's pistol-whipping of the victim, the judge remarked that

6

"[t]here is no explanation, no indication of any remorse, no context." (Tr. Disp.: 11).[6] Under AEDPA, the petitioner's claim fails for two separate and independently sufficient reasons. First, habeas relief is unavailable under 28 U.S.C. § 2254(d)(1) for this type of claim, because there is there is no "clearly established Federal law, as determined by the Supreme Court" governing such a claim. Second, even if there were, the Appeals Court's resolution of the issue was neither contrary to, nor an unreasonable application of, any such clearly established Supreme Court law.

### A. Habeas Relief is Unavailable Under 28 U.S.C. § 2254(d)(1) for a Claim that a Petitioner Received a Longer Sentence Based on His Failure to Express Remorse or Place His Criminal Acts in Context.

As the Supreme Court has made apparent, under 28 U.S.C. § 2254(d)(1), "clearly established law as determined by [the Supreme] Court 'refers to <u>holdings</u>, as opposed to the <u>dicta</u>, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Yarborough v. Alvarado*, 541 U.S. 652, 660-61 (2004) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)) (emphasis added). Under this definition, there is no "clearly established Federal law, as determined by the Supreme Court" sufficient to warrant habeas relief for the type of claim alleged by the petitioner in this case. More specifically, there is no Supreme Court case which prohibits a sentencing judge from considering—and giving a defendant a longer sentence based on—a lack of "explanation," "remorse," or "context" in connection with the defendant's offense.

---

[6] The transcript of the petitioner's trial, including the disposition hearing ("Tr. Disp.") was filed with the Court on March 30, 2006 (docket entry # 7).

In arguing that he is entitled to habeas relief, the petitioner relies entirely on the Supreme Court's decision in *Mitchell v. United States*, 526 U.S. 314 (1999). In that case, the Court held that "in determining facts about the crime which bear upon the severity of the sentence, a trial court may [not] draw an adverse inference from the defendant's silence." *Id.* at 316-17 (emphasis added). *Mitchell* involved a federal drug conviction, subject to the then-mandatory United States Sentencing Guidelines. In order to calculate Mitchell's guideline range, the district court held an evidentiary hearing to determine the quantity of drugs attributable to Mitchell. Several of Mitchell's codefendants testified at the hearing. The district court credited their testimony, and remarked that "[o]ne of the things persuading the court to rely on the testimony of the codefendants was [Mitchell's] not testifying to the contrary." *Id.* at 319 (quotation marks omitted). The Supreme Court ruled that the Fifth Amendment prohibited the district court from taking an adverse inference from Mitchell's silence in determining the disputed fact, *i.e.*, the drug quantity. *See id.* at 327-30.

Importantly, however, the Court limited its prohibition against adverse inferences to factual determinations:

> Whether silence bears upon the determination of a lack of remorse, or upon acceptance of responsibility for purposes of the downward adjustment provided in § 3E1.1 of the United States Sentencing Guidelines (1998), is a separate question. It is not before us, and we express no view on it.

*Id.* at 330 (emphasis added); *see also id.* at 338-41 (Scalia, J., dissenting) (criticizing the majority's failure to address whether its holding applied to situations other than where a sentencing court was "determining the facts of the offense"). Thus, as the Tenth Circuit recently recognized in rejecting a habeas claim like the petitioner's, "it remains unanswered by the Supreme Court whether a sentencing court in a non-capital case

8

may, for purposes other than determining the facts of the offense of conviction, draw an adverse inference from a criminal defendant's refusal to testify or cooperate." *Lee v. Crouse*, 451 F.3d 598, 605-06 (10th Cir. 2006) (holding that "there was no 'clearly established' law prohibiting what the trial court did in [that] case, *i.e.*, drawing an adverse inference from [his] refusal to submit to a psychological evaluation for purposes of determining whether [he] represented a continuing danger to society and/or whether he was amenable to rehabilitation"); *see also Paluskas v. Bock*, 410 F. Supp. 2d 602, 614-15 (E.D. Mich. 2006) (noting in habeas case that "the Supreme Court expressly declined to consider the questions of whether a defendant's silence bore upon a court's determination of lack of remorse or upon a defendant's acceptance of responsibility . . . because those issues were not before the Court"); *El v. Artuz*, 105 F. Supp. 2d 242, 254 (S.D.N.Y. 2000) (same).

The Supreme Court's recent decision in *Carey v. Musladin*, __ U.S. __, 127 S. Ct. 649 (2006)—decided after briefing to the Magistrate Judge was complete—is directly analogous. In *Carey*, a state court had held that buttons displaying a murder victim's image, worn by the victim's family at trial, did not deny a defendant a fair trial. Subsequently, the Ninth Circuit granted habeas relief on that issue. The Supreme Court reversed the Ninth Circuit's decision because the issue the petitioner raised—the effect of spectator conduct on a defendant's fair-trial rights—remains an "open question" in the Court's jurisprudence. 127 S. Ct. at 653-54. While the Court has articulated a test for prejudice applicable to state conduct, it has "never applied that test to spectators' conduct." *Id.* As a result, the Court concluded: "Given the lack of holdings from this Court regarding the potentially prejudicial effect of spectators' courtroom conduct of the kind involved here, it cannot be said that the state court

'unreasonably applied clearly established Federal law.'" *Id.* at 654 (quoting 28 U.S.C. § 2254(d)(1)).  Just as the lack of spectator-conduct cases foreclosed habeas relief in *Carey* (despite the existence of state-conduct cases), the lack of cases addressing a defendant's failure to express remorse similarly precludes relief here (despite the existence of *Mitchell*).  In sum, given "the lack of holdings" from the Supreme Court regarding the petitioner's claim, there is no "clearly established Federal law, as determined by the Supreme Court" sufficient to warrant relief under 28 U.S.C. § 2254(d)(1).  As a result, habeas relief is unavailable for the type of claim set forth in Ground One.

### B. The Appeals Court's Decision Was Not Contrary to or an Unreasonable Application of *Mitchell*.

Next, even if habeas relief were available under 28 U.S.C. § 2254(d)(1) for the type of claim the petitioner asserts, such relief still would not be warranted here, as the Appeals Court's decision was neither "contrary to" nor an "unreasonable application of" the Supreme Court's decision in *Mitchell*.

#### 1. The Appeals Court's Decision Was Not Contrary to *Mitchell.*

As described more fully at pages 7-8 of Respondent's initial memorandum in opposition to the petition,[7] a state-court decision is "contrary to" the Supreme Court's clearly established precedents if it either applies a rule that contradicts the governing law set forth in the Court's cases, or resolves a case differently from the Court on a set of materially indistinguishable facts.  *See Early*, 537 U.S. at 8.  Here, neither of these circumstances is present.

---

[7]    Docket entry # 12.

10

The facts here are not indistinguishable from those in *Mitchell*. Indeed, they are not even remotely similar. In *Mitchell*, the sentencing judge took an adverse inference from the defendant's silence in order to resolve a disputed fact against her. Here, in contrast, the sentencing judge—according to the petitioner—sentenced the petitioner more harshly because of his silence.[8]

Similarly, the Appeals Court did not apply a rule that contradicts the governing law set forth in *Mitchell*. As described above, the *Mitchell* Court limited its holding to factual determinations. *See Mitchell*, 526 U.S. at 316-17. Here, even the petitioner does not argue that the sentencing judge considered the petitioner's silence to resolve a disputed <u>fact</u> concerning his offense. As a result, the rule announced in *Mitchell* is inapplicable to the petitioner's case.

> 2. The Appeals Court's Decision Was Not an Unreasonable Application of *Mitchell.*

Next, even if *Mitchell* could be read to support the petitioner's argument, the Appeals Court's decision did not unreasonably apply its holding to the petitioner's case. The sentencing judge explained that the petitioner's sentence was based on both the viciousness of the crime and the seriousness of the petitioner's criminal history:

> This gentleman, in my view, is an extremely dangerous man. You say that I've seen many more dangerous. Perhaps. I don't really keep track, but this man ranks right up there in terms of his record. He is a persistent deadly offender, a deadly offender from the age of fourteen, numerous convictions of serious violence,

---

[8] In fact, the sentencing judge did not sentence the petitioner more harshly as a penalty for invoking his Fifth Amendment rights. Instead, as described more fully below, the judge simply expressed his view that the petitioner's attack on the victim was particularly vicious, and that there were no facts to help explain the petitioner's actions or place the attack in context as to mitigate the brutality of the petitioner's offense.

11

> starting with a manslaughter at age fourteen, numerous weapons convictions.
>
> In this case, he treated the victim with particular cruelty. There is no reason to believe that [the victim], whatever his record happened to have been, was anything but an innocent bystander in this. He knocked five front teeth out with a pistol. There is no explanation, no indication of any remorse, no context. He just knocked his teeth out. That, in my opinion, is treatment of a person with particular cruelty and warrants, in my opinion, a departure from the guidelines.
>
> This gentleman deserves to be incarcerated for as long a period of time as I can possibly commit him to. In my view, the government recommendation is lenient. This gentleman deserves the most severe penalty for what he did. What I am going to do is[—]I am going to take the ABDW and I'm going to give him on the low—the not-less-than portion of the sentence, I am going to give him nine years eleven months; and, on the high end, it will be ten years.
>
> From and after the ABDW sentence, I am going to give him four years and eleven months to five years. That is the possession of the firearm charge. That shall be from and after he finishes his state prison time on the ABDW.

(Tr. Disp.: 22-24). The petitioner's argument that he was given a longer sentence because of his silence is premised on one statement made by the sentencing judge: "There is no explanation, no indication of any remorse, no context." Read in context, the judge's statement is best viewed as an expression that the attack on the victim was unprovoked, and that there was nothing in the record (whether supplied by the petitioner or otherwise) to help explain the attack or mitigate its brutality. It was not a comment on the petitioner's silence, much less a suggestion that the petitioner would be penalized for exercising his Fifth Amendment rights. *Cf. Roberts v. United States*, 445 U.S. 552, 557 n.4 (1980) (doubting whether "a principled distinction may be drawn" between enhancing punishment and denying leniency). Instead, as the Appeals Court correctly recognized, "[t]he judge fashioned an appropriate, lawful sentence for the

12

[petitioner] based on the facts of the crimes for which he stands convicted and his criminal record." Supp. Ans., Exh. F.

Other habeas courts have rejected claims in more dubious circumstances. For example, in *El*, the sentencing judge stated that "if [petitioner] could shed some light on what happened and give [the judge] some sort of explanation—not explanation, but an understanding of the situation, [the judge] would also take that into account." 105 F. Supp. 2d at 254 (bracketed language in original). In fact, the judge warned the petitioner that "[i]f I remain perplexed, it's going to cost you. I am not asking you—saying that you have to give me an explanation, but I am perplexed and when I am perplexed, I resolve all doubt against the accused." *Id.* at 254-55. The habeas court found that the judge "made no effort to compel petitioner to testify. The judge did not threaten petitioner with additional punishment if he refused to cooperate. [He] merely clarified that absent any explanation for his behavior, petitioner would not be granted leniency in sentencing." *Id.* at 255. Thus, it rejected habeas relief:

> Although a defendant has a right to remain silent, a defendant's refusal to acknowledge any responsibility or to show any remorse in the face of clear evidence of wrongdoing is surely an appropriate factor for a sentencing judge to consider when choosing an appropriate sentence from within a range of statutorily-permissible sentences.

*Id.* Here, unlike in *El*, the sentencing judge did not warn the petitioner that it would "cost" him if he failed to provide an explanation. Rather, the sentencing judge in this case simply explained his view that there was no explanation justifying or mitigating the brutal nature of the petitioner's attack, and based the sentence on the circumstances of the offense and the petitioner's criminal history. *See Bohan v. Kuhlmann*, 234 F. Supp. 2d 231, 270-72 (S.D.N.Y. 2002) (denying habeas claim based

on *Mitchell* where the judge "in commenting on the necessity for a severe punishment based on the petitioner's character and past behavior, noted that he had failed to accept responsibility for the crime"). As a result, even if *Mitchell* stood for the proposition claimed by the petitioner, the Appeals Court's rejection of the petitioner's claim would not be an unreasonable application of such a holding.

### III. If Constitutional Error Existed with Respect to Ground Two, the Petitioner Would be Required to Show that the Error Had a Substantial and Injurious Effect on the Jury's Verdict.

As the Magistrate Judge correctly concluded, the Appeals Court's resolution of the petitioner's Confrontation Clause claim in Ground Two was not contrary to, or an unreasonable application of clearly established Supreme Court law. R&R at 8-10. Because of this finding, the Magistrate Judge did not undertake a harmless error analysis. But in setting forth the test which would apply had he found error, the Magistrate Judge erroneously cited the harmless-beyond-a-reasonable-doubt standard, rather than the substantial-and-injurious-effect standard. *Id.* at 10 (quoting *DiBenedetto*, 272 F.3d at 10).

As the First Circuit has recognized, on direct appeal, "a state court confronted by a preserved constitutional error must set aside the judgment unless it is satisfied that the error was harmless beyond a reasonable doubt,[9] [but a] federal habeas court is bound to uphold a state court judgment as long as the error did not have a substantial, injurious effect on the jury's verdict." *Petrillo v. O'Neill*, 428 F.3d 41, 44-45 (1st Cir. 2005) (citations and quotation marks omitted) (applying the substantial-and-injurious-

---

[9]     This is the standard set forth in *Chapman v. California*, 386 U.S. 18 (1967).

14

effect standard established in *Brecht*, 507 U.S. at 638); *see also Medina v. Matesanz*, 298 F.3d 98, 101 (1st Cir. 2002); *Sanna v. DiPaolo*, 265 F.3d 1, 14 (1st Cir. 2001).  The *Brecht* standard is "more favorable to the prosecution" than the *Chapman* standard. *Fortini v. Murphy*, 257 F.3d 39, 48 (1st Cir. 2001).

In stating that the *Chapman* standard applied to the petitioner's claim, the Magistrate Judge quoted *DiBenedetto*, 272 F.3d at 10.  That case described the "second element of the *Van Arsdall* test[10] [as] whether the error was harmless beyond a reasonable doubt."  But the First Circuit's description of the *Van Arsdall* test in *DiBenedetto* was as generally applied, <u>not</u> as applied in the habeas context.  *See DiBenedetto*, 272 F.3d at 10.  In that case, the First Circuit resolved the habeas petitioner's Confrontation Clause claim on the first prong of the *Van Arsdall* test, without reaching the question of harmlessness.  *See id*. at 10-11.  In contrast, in habeas cases where it has actually been necessary to assess the harmlessness of a constitutional error, the First Circuit has consistently applied the *Brecht* standard. *Petrillo*, 428 F.3d at 44-45; *Medina*, 298 F.3d at 101; *Sanna*, 265 F.3d at 14. Accordingly, if the limit placed on the petitioner's cross-examination of the victim had been constitutional error (it was not), the error must be reviewed under *Brecht*.  As described more fully at pages 25-26 of the Respondent's initial memorandum in

---

[10] As described more fully at pages 20-21 of the Respondent's initial memorandum in opposition to the petition, the *Van Arsdall* test refers to the Supreme Court's decision in *Delaware v. Van Arsdall*, 475 U.S. 673 (1986).  *Van Arsdall* provides the standard for determining when a limit on cross-examination violates the Sixth Amendment's Confrontation Clause.

opposition to the petition, the alleged error did not have a substantial and injurious effect on the jury's verdict.

## **CONCLUSION**

For the foregoing reasons, the Court should deny the petition for a writ of habeas corpus.

Respectfully submitted,

DAVID NOLAN,

By his attorney,

MARTHA COAKLEY
ATTORNEY GENERAL

/s/ Scott A. Katz
Scott A. Katz (BBO # 655681)
Assistant Attorney General
Criminal Bureau
One Ashburton Place
Boston, Massachusetts  02108
(617) 727-2200, ext. 2833

Dated:  February 6, 2007

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), including David H. Mirsky, counsel for Petitioner DiJuan Jackson.

/s/ Scott A. Katz
Scott A. Katz
